NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
28774
07-DEC-2011
10:31 AM**

NO. 28774

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


JOHN MUSSACK, Plaintiff-Appellant,
v. STATE OF HAWAIʻI, PATRICIA HAMAMOTO,
LEA ALBERT, MICHAEL HARANO, and LANELLE HIBBS,
in their official capacities, Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 04-1-0455-03 SSM)


SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard, J., and
Circuit Judge Karen S.S. Ahn, in place of Nakamura, C.J.,
and Fujise, Reifurth, and Ginoza, JJ., all recused)


Plaintiff-Appellant John Mussack (**Mussack**) appeals from the Judgment entered on October 15, 2007, by the Circuit Court of the First Circuit (**Circuit Court**), in favor of Defendants-Appellees State of Hawaiʻi (**State**), Patricia Hamamoto, Lea Albert, Michael Harano (**Harano**), and Lanelle Hibbs (collectively, **State Defendants**).[1]

On appeal, Mussack raises the following points of error:

(1) The Circuit Court erred in entering FOF 10, which states that Mussack "filed the instant lawsuit on May 27, 2004," alleging violations of [the Hawaiʻi Whistleblowers' Protection

_____

[1] The Honorable Sabrina S. McKenna presided.

Act (**HWPA**), Hawaii Revised Statutes (**HRS**) § 378-62 (Supp. 2009)]."

(2) The Circuit Court erred in entering COL 5, which provides that "[c]laims of employment retaliation, including those filed under HWPA are subject to the burden-shifting analysis set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)."

(3) The Circuit Court erred in entering COL 8, which provides that "[b]ecause [Mussack] cannot show that [the State's] explanation for his termination was pretext for retaliation, [Mussack] has presented no triable issue, and [the State] is entitled to judgment as a matter of law."

This court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citation omitted). The Hawai'i Supreme Court has often stated:

> summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Querubin, 107 Hawai'i at 56, 109 P.3d at 697 (citation, brackets, and ellipsis omitted).

In First Hawaiian Bank v. Weeks, 70 Haw. 392, 772 P.2d 1188 (1989), the Hawai'i Supreme Court discussed the burden of demonstrating entitlement to summary judgment:

> A summary judgment motion "challenges the very existence or legal sufficiency of the claim or defense to which it is addressed. In effect the moving party takes the position that he is entitled to prevail because his opponent has no valid claim for relief or defense to the action, as the case may be." 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2711, at 555-56 (1983) (footnote omitted). He thus has the burden of demonstrating that there is no genuine issue as to any material fact

> relative to the claim or defense and he is entitled to judgment as a matter of law. 10A Wright, Miller & Kane, supra, § 2727, at 121.
>
> He "may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent." Id. at 130 (footnote omitted); cf. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (One moving for summary judgment under Fed.R.Civ.P. 56 need not support his motion with affidavits or similar materials that negate his opponent's claims, but need only point out to the district court that there is absence of evidence to support the opponent's claims). For "if no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless." 10A Wright, Miller & Kane, supra, at 130.

Weeks, 70 Hawai'i at 396-97, 772 P.2 at 1190 (brackets and ellipses omitted).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Mussack's contentions as follows:

(1) Mussack alleges that FOF 10, providing that the instant lawsuit was filed on May 27, 2004, is incorrect because the lawsuit was actually filed on March 10, 2004. We agree. However, as Mussack acknowledges, this error is harmless.

(2&3) The Circuit Court did not err in concluding that there is no genuine issue of material fact and that the State Defendants are entitled to judgment as a matter of law.

The HWPA, codified at HRS § 378-62, provides, in relevant part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment **because**:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States;. . .

3

> unless the employee knows that the report is fals[e.]

(Emphasis added.)

In Crosby v. State Dept. of Budget & Fin., 76 Hawai'i 332, 8762.3d 1300 (1994), the Hawai'i Supreme Court described and discussed the elements of a valid claim under the HWPA:

> In order for an employee to prevail under the HWPA, however, the employer's challenged action must have been taken 'because' the employee engaged in protected conduct in order to be considered 'discriminatory' under the HWPA. In other words, a causal connection between the alleged retaliation and the 'whistleblowing' is required. The HWPA's legislative history indicates that the legislature intended that the required burden of proof be similar to that utilized in traditional labor management relations discharge cases. Under the National Labor Relations Act, as amended, 29 U.S.C. §§ 151-168 (1988), an employee has the burden of showing that his or her protected conduct was a 'substantial or motivating factor' in the decision to terminate the employee.
>
> . . . .
>
> We note, however, that an aggrieved employee always retains the ultimate burden of proof in a retaliatory discharge case. . . . **Once the employee shows that the employer's disapproval of his first amendment protected expression played a role** in the employer's action against him or her, 'the employer can defend affirmatively by showing that the termination would have occurred regardless of the protected activity.' . . .

Id. at 342, 876 P.2d at 1310 (citations and brackets omitted; emphasis added).

Thus, under Crosby, an HWPA plaintiff must show that the employee engaged in protected conduct, as defined in HWPA, that the employer took some adverse action against the employee, and that the employer's challenged action was taken because the employee engaged in the protected conduct, i.e., that the protected conduct was a substantial or motivating factor in the employer's decision to take the challenged action. To defeat the employer's summary judgment motion, the employee must bring forward some evidence of each element of his or her HWPA claim.

In this case, Mussack was first suspended, and later terminated, after two incidents, on February 22, 2001 and February 23, 2001, in which he removed and destroyed papers

freshly installed by a fellow teacher on five classroom bulletin boards and threateningly pointed his finger at another teacher, incidents characterized as "violent and threatening behavior towards other teachers" that "fails to meet the standards of conduct for professional teachers and creates an atmosphere of fear and violence in the workplace." In opposition to the State Defendants' summary judgment motion, Mussack submitted excerpts from the depositions of each of the four individual defendants, Mussack's declaration, and thirty-one exhibits thereto. As the State Defendants freely admit, during the course of his employement, Mussack engaged in protected activity when he reported his belief – *i.e.*, that Kailua Elementary School (**KES**) and/or the Department of Education (**DOE**) were violating special education laws – to his principal, school district representatives, state legislators, the Board of Education, the DOE Complaints Resolution Office, the federal judiciary, and the news media. It is also undisputed that Mussack was terminated from his employment. However, even viewing all of the evidence and the inferences drawn therefrom in the light most favorable to Mussack, which we must do, we conclude that Mussack has failed to bring forward any evidence whatsoever of a causal connection between Mussack's protected activities and his termination.

Mussack points to a November 1, 2000 oral warning from Harano regarding Mussack's conduct during parent-teacher conferences, specifically Mussack's upsetting of parents in those conferences, and with multiple follow-up calls to the parents, alleging that the school was breaking the law. HWPA clearly proscribes retaliation for reporting alleged law violations to the employer or to a public body, but it does not protect Mussack's conduct in the context of parent-teacher conferences. Moreover, Mussack fails to present any evidence that the warning regarding how he conducted parent-teacher conferences adversely

affected his "compensation, terms, conditions, location or privileges of employment."

Mussack also points to the "temporal proximity" of his whistleblowing activities and his termination. The record indeed includes evidence and reasonable inferences therefrom tending to show that Mussack made reports and raised complaints about KES's and DOE's alleged law violations almost continuously (at least monthly and often more frequently) from the beginning of his employment at KES. The mere fact that Mussack engaged his protected conduct with regularity is not evidence that his protected conduct was a substantial or motivating factor in his termination. Although the deposition excerpts and other exhibits establish that the State Defendants were aware of Mussack's "whistleblowing" activities, they show no disapproval of or retaliatory action in response to his reports to appropriate authorities. The evidence submitted by Mussack tends to show only that the State Defendants followed up on Mussack's complaints by investigating them, and seeking legal and other professional opinions regarding KES's compliance with special education laws. Having brought forward no evidence of a causal connection between his protected activities and his termination, Mussack failed to raise a genuine issue of material fact regarding his HWPA claim. Thus, it is unnecessary to look beyond the Supreme Court's decision in Crosby to conclude that the State Defendants are entitled to the entry of judgment as a matter of law and the Circuit Court did not err in entering summary judgment against Mussack on his HWPA claim.

For these reasons, we affirm the Circuit Court's October 15, 2007 Judgment.

DATED: Honolulu, Hawai'i, December 7, 2011

On the briefs:

Lunsford Dole Phillips
for Plaintiff-Appellant

James E. Halvorson
Maura M. Okamoto
Deputy Attorneys General
for Defendants-Appellees

Presiding Judge

Associate Judge

Acting Associate Judge